UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ACUREN INSPECTION, INC., ROCKWOOD SERVICE CORPORATION, ROCKWOOD CANADA HOLDINGS LIMITED, *and* ACUREN GROUP, INC.,<br>*Plaintiffs*,<br>v.<br>MICHAEL ABOYOUN, DWAYNE HENDERSON, *and* ANGUS BORLAND,<br>*Defendants*. | Civil No. 3:18cv1536 (JBA)<br><br>August 23, 2019 |

**RULING DENYING DEFENDANTS' MOTIONS TO DISMISS**

On September 12, 2018, Acuren Inspection, Inc., Acuren Group, Inc., Rockwood Canada Holdings Limited, and Rockwood Service Corporation (collectively, "Plaintiffs" or "Rockwood Controlled Group") commenced this action against Michael Aboyoun, Dwayne Henderson, and Angus Borland (collectively, "Defendants"). (Complaint [Doc. # 1] at 1.) Defendants now move to dismiss on *forum non conveniens* and international comity grounds, arguing that this action should instead be litigated in Canada. (Borland and Henderson Mot. to Dismiss [Doc. # 42]; Aboyoun Joinder in Mot. to Dismiss [Doc. # 43]) For the reasons that follow, Defendants' Motions to Dismiss are denied.

I. **Background**

Rockwood Service Corporation is a Delaware corporation with its principal place of business in Connecticut.[1] (Compl. ¶ 5.) Its subsidiary, Acuren Inspection, Inc., is also

---

[1] The facts set forth in this opinion are largely taken from the Complaint and the documents incorporated therein by reference. *See Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 (2d Cir. 2018). In ruling on the instant motion, the Court has also considered Defendants' Memorandum in Support of their Motion to Dismiss, Plaintiffs' Memorandum in Opposition

incorporated in Delaware and headquartered in Connecticut. (*Id.* ¶ 2.) Rockwood Service Corporation is also the parent to two Canadian companies, Acuren Group, Inc., and Rockwood Canada Holdings Limited. The Rockwood Controlled Group provides engineering and inspection services, including "rope access work" that involves scaling and rappelling tall structures in lieu of using scaffolding. (*Id.* ¶¶ 13-15.)

Defendants are all former employees of the Rockwood Controlled Group. (*Id.* ¶¶ 18, 22.) Aboyoun is a United States citizen, who resides in New Jersey and who worked for the American subsidiary Acuren Inspection, Inc. (*Id.* ¶ 6; *see also* Ex. B to Compl. [Doc. # 1-2] at 2.) Borland and Henderson are Canadian citizens who worked for the Canadian subsidiary Acuren Group. (Compl. ¶¶ 7, 8; Ex. 1 to Def.'s Mot. to Dismiss [Doc. # 42-2] at 24, 38.)

Prior to joining the Rockwood Controlled Group, Borland and Henderson served as president and vice president, respectively, of Remote Access Technology, Inc. ("RAT"), which also specializes in rope access work. (Compl. ¶ 17.) In March 2010, RAT's ownership transferred to the Rockwood Service Corporation in a share purchase transaction. (*Id.*; *see also* Ex. A to Compl. [Doc. # 1-1] at 4.) As a result, Borland and Henderson resigned from RAT and accepted employment with the Rockwood Controlled Group. (Compl. ¶ 18.) On March 25, 2019, Borland and Henderson executed a "Non-Competition and Non-Solicitation Agreement," which contained multiple restrictive covenants. (Ex. A to Compl. at 2, 6-8.) These covenants concerned detrimental interactions with businesses similar to the Rockwood Controlled Group, and they extended for two years after Borland and Henderson's respective employment periods. (*Id.* at 6-8.) The Non-Competition Agreement also contained a choice-of-law provision specifying that

[Doc. # 45], Defendants' Reply [Doc. # 49], and the declarations and exhibits accompanying those briefs.

2

"[t]his Agreement shall be construed and enforced in accordance with, and the rights of the parties hereto shall be governed by, the laws of the state of Connecticut" and that the "parties hereto hereby irrevocably consent to the jurisdiction of the state and federal courts in Connecticut." (*Id.* at 12.) Borland and Henderson also signed separate employment agreements in 2014 (Ex. 1 to Mot. to Dismiss [Doc. # 42-2]), which contained similar restrictive covenants but were governed by "the laws of the Province of Alberta, [Canada]." (*Id.* at 32, 46.)

Aboyoun joined the Rockwood Controlled Group's successor to RAT in 2011. (Compl. ¶ 22.) He reported to Borland, and "initially worked primarily in Alberta." (*Id.*) In 2013, Aboyoun "began working from his home in New Jersey," while continuing to report to Borland. (*Id.* ¶ 26.) In 2014, Aboyoun signed a Confidentiality, Non-Solicitation, and Non-Competition Agreement as a condition of his continued employment. (Compl. ¶ 27; *see also* Ex. B to Compl.) This agreement also contained a provision establishing that the "Agreement shall be construed and enforced in accordance with the substantive laws of the State of Connecticut" and that "Employee and Employer hereby consent to the exclusive jurisdiction of the state and federal courts located in Connecticut for the resolution of any dispute regarding or arising out of this Agreement." (Ex. B to Compl. at 6.) Aboyoun also "waive[d] any objection to the laying of venue of any such action in the said court(s), and further irrevocably waives any claims Employee may now or hereafter have that any such action brought in said court(s) has been brought in an inconvenient forum." (*Id.*) While at Acuren Inspection, Inc., Aboyoun oversaw the work of a Canadian employee, Patrick Ngoyi. (Compl. ¶ 25; Ex. 1 to Mot. to Dismiss at 5.)

The alleged actions that give rise to this action began as early as 2014. Plaintiffs allege that Defendants "acted in concert with each other" to "create competitive companies, deceive Acuren, deprive it of business opportunities, misappropriate its confidential and trade secret information,

3

and raid its highly skilled employees." (Compl. ¶ 32.) Plaintiffs allege that Aboyoun incorporated a competitive entity, TASC International LLC ("TASC U.S."), in New Jersey (Compl. ¶ 35) and that his assistant Patrick Ngoyi incorporated Total Access Solutions Corporation ("TASC Canada") in Alberta "using his wife's name, Loreen Jolie Kalonji Ngoyi" (*Id.* ¶¶ 32, 41). Plaintiffs further allege that "Henderson and Borland both were aware of, and approved of," the creation of these new entities, (*id.* ¶ 34.), and that all three Defendants "conspired to violate their contractual and fiduciary duties and harm Acuren's business interests" by using confidential proprietary information to their personal advantage, (*id.* ¶ 38.) Plaintiffs assert that they learned of Defendants' involvement with the TASC entities in 2017, when the Rockwood Controlled Group lost a customer contract to TASC Canada. (*Id.* ¶¶ 60, 63; *see also* Ex. 1 to Mot. to Dismiss at 10, 19 (identifying customer as Imperial Oil, Ltd., of Ontario, Canada).)

On February 1, 2018, Acuren Group, Inc., acting as the sole plaintiff, notified Ngoyi and TASC Canada that they were being sued in the Court of the Queen's Bench of Alberta ("Canadian Litigation"). (Ex. 1 to Mot. to Dismiss at 5.) The notice stated that Borland and Henderson "actively participated" in the alleged misconduct, but it did not name either as a defendant. (*Id.* at 5, 10.) The notice made no mention of Aboyoun. Defendant's counsel represents that the Canadian Litigation is pending. (Ex. 1 to Mot. to Dismiss at 2.)

On September 12, 2018, Plaintiffs filed this action in the District of Connecticut.

## II. Discussion

Defendants move to dismiss on two related grounds. First, they contend that the *forum non conveniens* doctrine applies here. (Def.'s Mot. to Dismiss at 1.) Second, they contend international comity requires dismissal of the suit or, in the alternative, a stay of at least six

4

months to "determine whether the Canadian Lawsuit will fairly resolve Plaintiffs' claims." (*Id.* at 1-2.) The Court will address each argument in turn.

### A. *Forum Non Conveniens*

The *forum non conveniens* doctrine is "a discretionary device that permits a court in rare instances to dismiss a claim even if the court is a permissible venue with proper jurisdiction over the claim." *Carey v. Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234, 237 (2d Cir. 2004) (internal quotation marks omitted). When exercising that discretion, "courts assess: (1) the deference to be accorded the plaintiff's choice of forum; (2) the adequacy of the alternative forum proposed by the defendants; and (3) the balance between the private and public interests implicated in the choice of forum." *Fasano v. Yu Yu*, 921 F.3d 333, 335 (2d Cir. 2019).

The defendant bears the burden of proof on the second and third elements, as well as the "ultimate burden of persuasion." *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 189 (2d Cir. 2009). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). An action should only be dismissed on *forum non conveniens* grounds "if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 74–75 (2d Cir. 2001) (en banc).

"In deciding a *forum non conveniens* challenge, a court may rely on evidence outside the pleadings, including affidavits." *Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*, 806 F. Supp. 2d 712, 724 (S.D.N.Y. 2011) (citing *Alcoa S.S. Co., Inc. v. M/V Nordic Regent*, 654 F.2d 147, 158 (2d Cir. 1980) (en banc)).

5

1. **Deference**

Review of a *forum non conveniens* motion begins with "a strong presumption in favor of the plaintiff's choice of forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)). The degree of deference afforded to a "plaintiff's choice of forum moves on a sliding scale." *Iragorri*, 274 F.3d at 71. "The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice." *Id.* at 71–72. When determining whether a plaintiff's choice of forum is motivated by valid reasons, a court considers: (1) "the convenience of the plaintiff's residence in relation to the chosen forum;" (2) "the availability of witnesses or evidence to the forum district;" (3) "the defendant's amenability to suit in the forum district;" (4) "the availability of appropriate legal assistance;" and (5) "other reasons relating to convenience or expense." *Id.* at 72. However, "a district court is not required to address each of these factors specifically in exercising its considerable discretion to resolve a *forum non conveniens* motion." *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 155 (2d Cir. 2005).

To begin, the Court considers the Plaintiffs' relationship to the present forum. A plaintiff is "generally entitled to great deference when the plaintiff has sued in the plaintiff's home forum," while a "foreign plaintiff is entitled to less." *Iragorri*, 274 F.3d at 71. This is because it is "reasonable to assume" that the choice is "convenient." *Piper*, 454 U.S. at 256. Parent company Rockwood Service Corporation is an American entity that maintains its principal place of business in Connecticut, as does its American subsidiary Acuren Inspection, Inc. (Compl. ¶¶ 2, 5.) The two other subsidiaries are each based in Canada. (*Id.* ¶¶ 3, 4.)

Defendants contend that the "two corporate Canadian Plaintiffs are the ones critical to the action" and suggest that the inclusion of the American Plaintiffs is motivated by forum-

6

shopping concerns. (Def.'s Mem. Supp. Mot. to Dismiss at 9.) Defendants argue that the citizenship of the American entities should thus be discounted. (*See id.*) But Defendants do not dispute that the two corporate Canadian Plaintiffs are subsidiaries of the American Plaintiff Rockwood Service Corporation. (*See* Reply to Pls.' Resp. to Mot. to Dismiss [Doc. # 49] at 3-4 (acknowledging corporate relationship.) Nor do Defendants dispute that Borland and Henderson each entered a Non-Competition Agreement with Rockwood and that Aboyoun entered an Employment Agreement with American Plaintiff Acuren Inspection, Inc. (*See id.* at 3 n.4 (acknowledging agreements).) Because this action partially arises out of those interests with those American entities, the Court will not disregard the American entities' presence in this suit. As these entities are principally based in Connecticut, the Court finds that the American Plaintiffs' choice to bring suit in their home forum is entitled to deference.

Further, the forum selection clauses in those Agreements are cause for deference here. In this circuit, Courts give "substantial deference to the forum selected by the parties, particularly where this choice was made in an arm's-length negotiation by experienced and sophisticated businessmen." *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 721 (2d Cir. 2013) (internal quotation marks omitted); *see, e.g, Bloomberg Fin. L.P. v. UBS AG*, 358 F. Supp. 3d 261, 268 (S.D.N.Y. 2018) (according deference to plaintiff's choice of forum where parties entered agreement "to litigate in *some* court in New York State"); *Reliance Ins. Co. v. Six Star, Inc.*, 155 F.Supp.2d 49, 58 (S.D.N.Y. 2001) (concluding that defendants "have no basis for challenging this forum on the basis that it is inconvenient to the parties" where defendants agreed to a permissive forum selection clause). Here, all three defendants consented to the jurisdiction of the state and federal courts of Connecticut. Borland and Henderson each "irrevocably consent[ed]" to this jurisdiction, (Ex. A to Compl. at 12), and Aboyoun consented to its "exclusive" jurisdiction

while also waiving "any objection" that a claim brought in a Connecticut court "has been brought in an inconvenient forum," (Ex. B to Compl. at 6).

Defendants argue that these forum selection clauses are merely "permissive" and that the Court is thus not required to adjudicate this action. (Def.'s Mem. Supp. Mot. to Dismiss at 14 (citing *Innovative Techs., LLC v. Nanoprotech FL, LLC*, 2018 WL 1440539, at *3 (E.D.N.Y. Mar. 22, 2018) (finding forum selection clause to be permissive and stating "default rules of the *forum non conveniens* doctrine apply")). But a permissive forum selection clause that "contains a waiver of objections to the designated venue is enforced as mandatory, at least in cases where the plaintiff chooses the forum designated in the clause." *S & L Birchwood, LLC v. LFC Capital, Inc.*, 752 F. Supp. 2d 280, 283 (E.D.N.Y. 2010) (citing *Aguas Lenders Recovery Group, LLC v. Suez, S.A.*, 585 F.3d 696, 700 (2d Cir. 2009)). "Thus, the pairing of a permissive forum selection clause along with language of irrevocable waiver of any objection to the choice of forum can result in a finding that the clause is presumptively enforceable." *Id.* As noted, all three Defendants offered their "irrevocabl[e] consent" or waived "inconvenient forum" claims to any lawsuit brought in Connecticut under the Agreements.

Because two of the four Plaintiffs are suing in their home forum and because Defendants have contractually consented to litigation in this forum, the Court finds that Plaintiffs' choice to bring this action in Connecticut is entitled to substantial deference.

### 2. Adequate Forum

"An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003).

8

The parties here do not dispute that Canada provides an adequate alternative forum for this action. Indeed, Plaintiffs are already pursuing related litigation in the Court of the Queen's Bench of Alberta. (Ex. 1 to Mot. to Dismiss at 5.) As such, Defendants have carried their burden as to the second factor.

### 3. Private and Public Interests

At the third and final step, a district court assesses the private and public interests in litigating the claim in Plaintiff's chosen forum. The private interest factors address the "convenience of the litigants," and they include "the relative ease of access to sources of proof," "the availability of compulsory process for attendance of unwilling [witnesses]," "the cost of obtaining attendance of willing[] witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Iragorri*, 274 F.3d at 73–74. The public interest factors address the "[a]dministrative difficulties" of adjudicating a claim in an inconvenient forum, including the burden of jury duty on a "community which has no relation to the litigation" and the potential challenge of "untangl[ing] problems in conflict of laws, and in law foreign to itself." *Gilbert*, 330 U.S. at 508-09.

Here, the balance of private interests hangs in equipoise, as nearly every party to this litigation will face some inconvenience whether it is adjudicated in Connecticut or Alberta. In support of their motion for dismissal, Defendants contend that many of the parties and key witnesses are "are directly connected to Canada." (Def.'s Mem. Supp. Mot. to Dismiss at 12.) But, as Plaintiffs note, these individuals and entities are scattered throughout Canada's provinces. (Pls.' Mem. in Opp. to Mot. to Dismiss at 7 ("Henderson (who lives in Toronto) and Borland (who lives in Halifax, Nova Scotia) reside approximately 1,680 and 2,300 miles from Edmonton, respectively—over four times the distance each would have to travel to New Haven.").)

9

Additionally, the remaining parties to the litigation are all in the United States, in either Connecticut or New Jersey. With these individuals so dispersed, neither forum appears "significantly preferable." *Iragorri*, 274 F.3d at 74.

Defendants also suggest that litigation in Connecticut would be inconvenient because many of the key documents and records are located in Canada.[2] (Def.'s Mem. Supp. Mot. to Dismiss at 12.) But as other courts have noted, "[l]ogistical hurdles to obtaining evidence and voluntary testimony in the United States present less of a problem than they used to in light of technological advances and the ease of international travel." *Shi v. New Mighty U.S. Tr.*, 918 F.3d 944, 951 (D.C. Cir. 2019). Given that many of the records that are alleged to be relevant are in digital format, (*see* Compl. ¶¶ 33-38, 40, 47, 49, 51, 56, 63), it should not be "genuinely inconvenient" to produce them in Connecticut. *Iragorri*, 274 F.3d at 75.

The public interests here also fail to justify dismissal. Defendants argue that dismissal would serve the interests of the public because "none of the alleged misdeeds or any other allegation in the Complaint involve conduct that occurred in Connecticut." (Def.'s Mem. Supp. Mot. to Dismiss at 13.) However, the contracts incorporated into the Complaint make a choice of Connecticut law, giving Connecticut courts an interest in the matter. *See Vbrick Sys., Inc. v. Stephens*, 2009 WL 1491489, at *5 (D. Conn. May 27, 2009) ("Connecticut courts have a strong

---

[2] Defendants represent that discovery is already underway in the Canadian Litigation and argue that dismissal here would serve judicial economy. (Def.'s Mem. Supp. Mot. to Dismiss at 12.) Indeed, it is possible that pursuit of a single action would be more efficient for a number of the parties involved. However, the "existence of related litigation is not one of the factors enumerated by *Gilbert*" and is more properly considered as a matter of international comity. *DiRienzo v. Philip Services Corp.*, 294 F.3d 21, 31 (2d Cir. 2002); *see also, e.g., Giaguara S.p.A. v. Amiglio*, 257 F. Supp. 2d 529, 539 (E.D.N.Y. 2003) ("[T]he mere fact that there are parallel proceedings in New York and Canada predicated on similar facts does not compel dismissal for *forum non conveniens*.").

interest in protecting the interests of its resident businesses and adjudicating disputes which are governed by Connecticut law, as this."). Even though many of the actions alleged in the Complaint occurred elsewhere, Connecticut juries are nonetheless equipped to apply the jurisdiction's law to such facts. Thus, it would not be markedly inconvenient to the public for the instant suit to be adjudicated in this jurisdiction.

Although there may be some advantages to pursing one consolidated action in Canada, Defendants have not carried their significant burden of showing that the Court of the Queen's Bench of Alberta is "significantly preferable" or that the District of Connecticut is "genuinely inconvenient." *Iragorri*, 274 F.3d at 74–75.

### 4. Balancing the *Forum Non Conveniens* Factors

The balance of the *forum non conveniens* factors is not sufficiently strong to justify dismissal. Although Canada provides a comparable forum for this action, the *forum non conveniens* doctrine requires more—particularly where a party has previously given consent to be sued in the United States. Because Defendants have not made a "clear showing that a trial in the United States would be so oppressive and vexatious to them as to be out of all proportion to plaintiffs' convenience," *DiRienzo*, 294 F.3d at 30, the Court denies Defendants' motion to dismiss on *forum non conveniens* grounds.

### B. International Comity

Having determined that Plaintiff's choice of forum is not genuinely inconvenient, the Court next considers whether this action should nonetheless be dismissed or stayed under the doctrine of international comity. This doctrine is premised on "respect for litigation in and the courts of a sovereign nation, fairness to litigants, and judicial efficiency," *Royal & Sun All. Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 94 (2d Cir. 2006), and it permits courts to

11

"abstain from exercising jurisdiction in deference to a foreign nation's courts that might be a more appropriate forum for adjudicating the matter," *In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 101 (2d Cir. 2019). International comity "is not an imperative obligation of courts but rather is a discretionary rule of practice, convenience, and expediency." *Royal & Sun*, 466 F.3d at 92 (internal quotation marks omitted).

As a general rule, "concurrent jurisdiction in United States courts and the courts of a foreign sovereign does not result in conflict." *Id.* Parallel proceedings "should ordinarily be allowed to proceed simultaneously," as the "mere existence of parallel foreign proceedings does not negate the district courts' virtually unflagging obligation to exercise the jurisdiction given them." *Id.* (alteration and internal quotation marks omitted). A court should only depart from this rule where "exceptional circumstances" are present. *Id.* at 93.

As a basic matter, it does not appear that the Canadian Litigation qualifies as a parallel proceeding—that is, a proceeding where "substantially the same parties are contemporaneously litigating substantially the same issue in another forum," *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (internal quotation marks omitted). Although the operative nucleus of facts is the same, none of the Defendants here are parties to the Canadian Litigation. (Ex. 1 to Def.'s Mot. to Dismiss at 5.). Thus, it cannot be said that the Canadian Litigation will "dispose of all claims raised in the federal court action." *Mosley v. Baker*, 2011 WL 2693513, at *2 (S.D.N.Y. June 30, 2011) (quoting *Moore's Federal Practice* ¶ 122.06(1) (3d. ed. 2010)).

Further and fatally, Defendants have not identified any exceptional circumstance warranting dismissal. Defendants invoke the doctrine of international comity on the grounds that consolidation of this action into a single Canadian suit will serve the end of "judicial

12

efficiency." (Def.'s Mem. Supp. Mot. to Dismiss at 14 (quoting *von Spee v. von Spee*, 514 F. Supp. 2d 302, 318 (D. Conn. 2007).) But courts in this circuit have regularly held that the "inconvenience and expense associated with parallel proceedings . . . do[] not . . . justify[] deference to a parallel foreign litigation." *Tarazi v. Truehope Inc.*, 958 F. Supp. 2d 428, 438 (S.D.N.Y. 2013); *see also Accent Delight Int'l Ltd. v. Sotheby's*, 2019 WL 2602862, at *5 (S.D.N.Y. June 25, 2019) ("'[A]lthough it can be expensive and time consuming for parties to have to litigate similar conduct in different forums,' that fact alone does not 'give rise to exceptional circumstances.'" (quoting *NovaSparks SA v. EnyxFPGA*, 344 F. Supp. 3d 666, 679 (S.D.N.Y. 2018))). For international comity to apply, other serious justifications must exist. *See, e.g., von Spee*, 514 F. Supp. 2d at 318 (dismissing on international comity grounds where, "in light of the fifteen reasoned decisions, reached at multiple levels of the German courts, this Court's decision to exercise its jurisdiction would reflect disrespect for the German court's decisions and rulings").

Defendants have also failed to adequately justify a stay. Because Defendants here are not defendants to the Canadian Litigation, there is no basis to believe that proceeding "will fairly resolve the claims in Plaintiff's Complaint." (Def.'s Mem. Supp. Mot. to Dismiss at 14.) As such, there is no reason to delay litigation in this forum for the purposes of avoiding preclusion.

In sum, the Court declines to apply the doctrine of international comity to this suit.

## III. Conclusion

Accordingly, Defendants' Motions to Dismiss [Docs. # 42, 43] are DENIED.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 23rd day of August 2019.